# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## SOUTHERN DIVISION

| | |
|---|---|
| BURTON KENNETH LANDMAN, | 4:18-CV-04175-KES |
| Plaintiff, | |
| vs. | ORDER DIRECTING SERVICE IN PART AND DISMISSING IN PART, GRANTING MOTION TO AMEND COMPLAINT, GRANTING MOTION FOR SERVICE, DENYING MOTION TO APPOINT COUNSEL, AND DENYING MOTION TO SUPPLEMENT COMPLAINT |
| DENNIS KAEMINGK, SUED IN OFFICIAL AND/OR INDIVIDUAL CAPACITY; ROBERT DOOLEY, SUED IN OFFICIAL AND/OR INDIVIDUAL CAPACITY; BRENT FLUKE, SUED IN OFFICIAL AND/OR INDIVIDUAL CAPACITY; ALEX REYES, SUED IN OFFICIAL AND/OR INDIVIDUAL CAPACITY; KARISSA LIVINGSTON, SUED IN OFFICIAL AND/OR INDIVIDUAL CAPACITY; AND JANE/JOHN DOE STAFF WORKING IN MDSP MAILROOM ON/AFTER 5/1/2018, SUED IN THEIR OFFICIAL AND/OR INDIVIDUAL CAPACITIES; | |
| Defendants. | |

## INTRODUCTION

Plaintiff, Burton Kenneth Landman, is an inmate at Mike Durfee State Prison (MDSP). Landman filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. The court granted Landman leave to proceed in forma pauperis and Landman paid his initial partial filing fee. Dockets 5, 12. Landman moves to amend his complaint by inserting additional pages to his original complaint (Docket 1). Docket 14. Landman also moves for the

appointment of counsel, to proceed in forma pauperis, to amend and supplement his amended complaint, and for the court to adopt and extend the "Brakeall single copy rule." Dockets 7, 10, 11, 16, 17. The court has now screened his amended complaint (Dockets 1, 14) under 28 U.S.C. § 1915A, and for the reasons stated below, the court directs service in part and dismisses in part.

## FACTUAL BACKGROUND

According to Landman's complaint:

Landman is a disabled veteran with multiple disabilities including military-related PTSD, severe sleep apnea, and hypertension. Docket 1 ¶ 27. Since 1998, Landman has sought disability benefits from the Department of Veterans Affairs (VA) with the help of MDSP staff. *Id.* ¶ 29. Landman has been awarded VA service-connection benefits and is in the process of advancing various claims and appeals on these medical conditions. *Id.* ¶ 30. MDSP staff were aware that Landman is a veteran with VA service-connected disabilities, and were aware of the existence and treatment of his medical conditions. *Id.* ¶¶ 28, 34-35.

Since 1997, MDSP staff have regularly processed and delivered manila-enveloped mail addressed to Landman from a variety of agencies including mail from the VA. *Id.* ¶ 36. Landman frequently corresponds with the VA on pending disability benefits claims and appeals, and receives VA appellate decisions from appellate judges and federal courts. *Id.* ¶ 33. On January 19, 2018, MDSP posted a notice that procedures concerning incoming envelopes to the prison

would change. *Id.* ¶ 16. On May 2, 2018, MDSP posted a revised policy, Inmate Correspondence Policy 1.S.D.3, which stated that "incoming envelopes must be white in color . . . [e]nvelopes that do not meet the criteria will be returned unopened to the sender[.]" *Id.* ¶ 20.

The day before, on May 1, MDSP mailroom staff rejected a manila envelope addressed to Landman from the VA's Board of Veterans Appeals (BVA). *Id.* ¶ 38. The correspondence was rejected without notice to Landman and was returned unopened to the sender. *Id.*; *see also* Docket 1-1 at 8-9. A different VA decision and order addressed to Landman was rejected by MDSP staff on May 17. Docket 1 ¶ 39; *see also* Docket 1-1 at 6-7. Landman alleges that Karissa Livingston and unknown mailroom staff personally rejected his incoming legal mail from the VA, returned the mail as undeliverable to the sender, and failed to notify Landman of the rejections. Docket 1 ¶ 87. Landman remained unaware of his rejected legal mail until June 11, 2018, when the VA Evidence Intake Center sent a letter to Landman alerting that his BVA decision letters were being rejected and returned to it as undeliverable. *Id.* ¶ 40; *see also* Docket 1-1 at 6-9. Landman alleges that he no longer can litigate his federal disability claim because defendants rejected his mail, and his responses to the VA decisions are now time-barred. Docket 1 ¶ 97.

On June 12, 2018, Landman filed an Informal Resolution Request (IRR), alleging that the rejection of his VA mail could cost him $2,977.86 in monthly VA disability benefits. *Id.* ¶ 41; *see also* Docket 1-1 at 10-12. That same day, MDSP responded to his IRR, stating that "the items were rejected because of

the colored manila envelope per policy. VA is not considered legal mail." Docket 1 ¶ 42; *see also* Docket 1-1 at 13. Three days later, on June 15, Landman filed a Request for Administrative Remedy (ARR), alleging that the reply to his IRR did not reasonably respond to his issue and injury. Docket 1 ¶ 44; *see also* Docket 1-1 at 14. On June 19, Landman asked Alex Reyes, MDSP Associate Warden of Operations and Facility Americans with Disabilities Act (ADA) Coordinator, for an "Inmate Request for Reasonable Accommodation Form" as required by Department of Corrections (DOC) ADA Policy 1.1.E.7. Docket 1 ¶ 45. Reyes declined to respond to Landman's request. *Id.* Landman alleges this was in retaliation for filing his mail interference grievances because Reyes' reaction was only seven days after Landman filed his IRR and four days after his follow-up ARR. *Id.* ¶ 88.

Because Reyes would not give him the ADA form, Landman created his own ADA Reasonable Accommodation Form and provided it to Reyes on June 24. *Id.* ¶ 46; *see also* Docket 1-1 at 15. Reyes again did not respond. Docket 1 ¶ 46. On July 18, Landman's June 15th ARR request was denied by Brent Fluke, MDSP Warden. *Id.* ¶ 48. Fluke reiterated that all non-white envelopes would continue to be rejected and returned unopened to the sender without notice to inmates. *Id.* On July 26, Landman appealed the denial of his ARR to Dennis Kaemingk, Secretary of the South Dakota DOC. *Id.* ¶ 50; *see also* Docket 1-1 at 16.

After his VA mail issues, Landman had a chronic case exam conducted by a Physician Assistant (PA) with the DOC Medical Health Services. Docket 1

¶ 52. The PA was concerned about the spike in Landman's normally well-controlled blood pressure. *Id.* On August 23, another exam was conducted concerning Landman's military-related PTSD, anxiety, and depression. *Id.* ¶¶ 52-53. Landman was given various techniques and exercises to use when distressed over the mail rejections. *Id.* ¶ 53; *see also* Docket 1-1 at 21-23. Landman alleges that the stress caused by his VA correspondence being rejected has greatly affected his sleep, his previously managed PTSD, anxiety, depression, and has increased the frequency and intensity of his panic attacks. Docket 1 ¶ 43. During this time, Fluke told Landman that the prison was looking into getting VA mail deemed privileged or legal mail, and that Fluke would personally contact the VA to re-mail the rejected decisions. *Id.* ¶¶ 54, 63.

Landman also alleges that the prison rejected or diverted a VA past-due benefits check of $39,073.34 that the VA released to Landman on July 27, 2018. *Id.* ¶¶ 69, 80; *see also* Docket 1-1 at 30-31. This retroactive benefits money was never released to Landman, reflected in his bank statements, or physically delivered to him by MDSP staff. Docket 1 ¶ 81. Landman was unaware that the money had been released to him until November 15, when he received a November 8th letter from the VA, informing Landman that the Department had failed to withhold 20% of attorney's fees when the VA released to Landman the entire amount of his past-due benefits, resulting in an overpayment of $7,814.67. *Id.* ¶ 80; *see also* Docket 1-1 at 30-31. To recoup the attorney's fees, the VA will garnish $136.42 monthly disability benefits until the missing $7,814.67 is paid in full. Docket 1 ¶ 84. Landman claims

Livingston, mailroom staff, or the other defendants converted this money in retaliation for submitting his grievances and ADA accommodation requests. *Id.* ¶¶ 82, 87. Because defendants converted and stole his $39,073.34 check, Landman cannot pay the missing $7,814.67. *Id.* ¶ 83.

On November 20, 2018, Landman was handed an envelope from DOC Administration addressed to Landman but not postmarked or labeled. *Id.* ¶ 75. The letter said Landman's request for appeal of administrative remedy was denied by Kaemingk for two reasons: "[Landman] did not provide a copy of the [IRR]," and "[t]his issue cannot be appealed to the Secretary of Corrections." *Id.* ¶¶ 75-76; *see also* Docket 1-1 at 19. Landman contends that he has exhausted all available administrative remedies. Docket 1 ¶ 14. As of the date of the complaint, Landman has not received his rejected legal mail, missing VA funds, and the DOC policy prohibiting manila envelopes has not changed. *Id.* ¶ 54.

## LEGAL STANDARD

The court must accept "the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor" of the non-moving party. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory.

*Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008); *see also Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they are "(1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

## DISCUSSION

### I.   Official Capacity Claims

Landman has sued each of the defendants in their official capacity. Docket 1 at 1. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66. The Eleventh Amendment generally acts as a bar to suits

7

against a state for money damages unless the state has waived its sovereign immunity. *Id.* But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply. *See Pearson v. Callahan*, 555 U.S. 223, 242-43 (2009).

Here, as part of Landman's requested remedy, he seeks to recover money damages. Docket 1 ¶¶ 124-32. Consequently, because Landman has sued defendants in their official capacities, Landman has asserted a claim for money damages against the state of South Dakota. The state of South Dakota has not waived its sovereign immunity. Thus, to the extent Landman seeks to hold defendants liable in their official capacities for money damages, the court finds that defendants are protected by sovereign immunity and are entitled to judgment as a matter of law. Landman's claims against defendants in their official capacities for injunctive relief survive screening.

## II.    First Amendment Claim

Landman alleges that defendants violated his First Amendment right of free speech to send and receive mail. *Id.* ¶ 94. "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment[.]" *Jones v. N.C. Prisoners' Union, Inc.*, 433 U.S. 119, 125 (1997). "While prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights because of the needs of the penal system." *Kaden v. Slykhuis*, 651 F.3d 966, 968 (8th Cir. 2011) (citation omitted). In *Turner v. Safley*, the Supreme Court held that prison rules and restrictions on First Amendment rights are

constitutional only "if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). The *Turner* Court provided four factors to determine whether the prison rule withstands scrutiny:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

*Thongvanh v. Thalacker*, 17 F.3d 256, 259 (8th Cir. 1994). This standard applies to both incoming and outgoing mail. *Id.*

In *Kaden*, an inmate at South Dakota State Penitentiary (SDSP) alleged that the prison mailroom's rejection of his magazine violated his rights under the First Amendment. The complaint was dismissed by the district court under § 1915A. 651 F.3d at 968. The Eighth Circuit Court of Appeals held that, "if a valid prison regulation is applied to particular mail items in such a way as to negate the legitimate penological interest, the regulation may be unconstitutional as applied to those items. Before censoring materials, prison authorities must review the content of each particular item received." *Id.* at 969 (citing *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 986 (8th Cir. 2004)). The Eighth Circuit accepted Kaden's allegations as true on appeal and found them "sufficient to plausibly state a claim under § 1983." *Id.* The Eighth Circuit pointed out that at the "extremely early stage of the litigation" before defendants "were required to answer the complaint," there was "a reasonable

inference that SDSP's policy was unconstitutionally applied to the censored publication." *Id.*

The same is true here. Landman alleges defendants violated his rights under the First Amendment by rejecting his mail from the VA because of the type of envelope the VA utilized. Docket 1 ¶ 94. Landman alleges that Kaemingk, Dooley, Fluke, and Reyes created the policy against manila envelopes, and that Livingston and unknown mailroom staff implemented the policy. *Id.* Landman alleges that all named parties were involved in denying his grievance about failing to receive his legal mail. *Id.* Like *Kaden*, at this stage there is "a reasonable inference that [MDSP's] policy was unconstitutionally applied" to Landman's VA mail. 651 F.3d at 969. The prison regulation, as allegedly applied to Landman's VA mail, is applied in such a way as to negate the legitimate penological interest. *See Murphy*, 372 F.3d at 986. Thus, Landman's First Amendment claim against all defendants is sufficiently pleaded to survive initial review under 28 U.S.C. § 1915A.

## III. Access to the Courts Claim

Like his First Amendment claim, Landman alleges that defendants violated his right of access to the courts. Docket 1 ¶ 97. "Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)); *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). "To protect that right, prisons must provide inmates with the ability to mail their complaints and related legal correspondence[.]" *Id.* (citations omitted). "To state a claim . . .

10

inmates must assert that they suffered an actual injury to pending or contemplated legal claims." *Id.* (citing *Casey*, 518 U.S. at 351).

Landman alleges that he was not given two appellate decisions from Judge Timothy H. O'Shay because of MDSP's manila envelope policy. Docket 1 ¶ 97. Because he was not notified that his VA mail was returned to sender, Landman was prevented from "timely responding" to both an April 24th and May 10th decision. *Id.* Landman claims his responses to the decisions are now time-barred, and that he no longer can litigate his federal disability claim. *Id.*

In *Moore v. Rowley*, a prisoner sued the prison because it would not send his sealed bankruptcy petition. 126 F. App'x 759, 760 (8th Cir. 2005). The Eighth Circuit upheld the grant of summary judgment in favor of the defendant "because the record demonstrate[d] that Rowley did not delay or refuse outright to send his petition." *Id.* at 761. Landman alleges that because the prison withheld his legal mail Landman did not appeal the holding of the court. Docket 1 ¶ 97. Unlike *Rowley*, at this stage, Landman has sufficiently alleged facts that defendants either created the policy or personally refused to deliver his VA appeal mail. Landman alleges his response to the decisions is now time-barred because of defendants' outright refusal to deliver his legal mail. *Id.* Based on these allegations, Landman sufficiently alleges that he has suffered an actual injury to his pending legal claims. Thus, Landman's claim of denial of access to the courts based on the MDSP policy against defendants is sufficiently pleaded to survive initial review under 28 U.S.C. § 1915A.

Landman also alleges that Reyes violated his access to the courts by not allowing him to access the MDSP grievance procedures. Docket 1 ¶ 45. A prisoner has a First Amendment right "to petition for redress of grievances under a prison's grievance procedures[.]" *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010). This right protects a prisoner from retaliation by prison officials for using the grievance process. At this early stage of litigation, Landman's claim against Reyes based on denying him access to file grievances is sufficiently pleaded to survive initial review under 28 U.S.C. § 1915A.

Finally, Landman alleges that Fluke, Kaemingk, and Reyes failed to supervise the mailroom staff who rejected his VA mail. Docket 1 ¶ 88. "[V]icarious liability is inapplicable to § 1983 suits[.]" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (internal quotation omitted). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). A supervisor's liability must be based on his or her own "deliberate indifference or tacit authorization." *Grayson v. Ross*, 454 F.3d 802, 811 (8th Cir. 2006) (citing *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994)). Although Landman alleges that all defendants had personal involvement in or direct responsibility for Landman's mail being rejected, Landman cannot sue Fluke, Kaemingk and Reyes under a theory of vicarious liability. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (holding that § 1983 liability requires personal involvement in or direct responsibility for the constitutional violations). Thus,

Landman's vicarious liability claim against Fluke, Kaemingk, and Reyes is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## IV. ADA Non-Accommodation, Discrimination, and Retaliation Claims

Landman alleges a number of claims under the ADA. Docket 1 ¶¶ 105-09. "The ADA consists of three titles addressing discrimination against the disabled in different contexts." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998). "Title I prohibits employment discrimination, Title II prohibits discrimination in the services of public entities, and Title III prohibits discrimination by public accommodations involved in interstate commerce such as hotels, restaurants, and privately operated transportation services." *Id.* (citing 42 U.S.C. §§ 12112, 12132, 12182, 12184). Landman does not indicate which title provides the cause of action for his claims, but does allege that he is "a person within the meaning of Title II of the ADA." Docket 1 ¶ 105. Because Landman is not an employee of the state, and the prison is not a private entity, the court construes Landman's claims as proceeding under Title II of the ADA. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (citing 42 U.S.C. § 12131(1)(B)).

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009). There are various means of discrimination under the ADA, including intentional

discrimination, retaliation, and the failure to make reasonable accommodations. *See Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). To allege that defendants violated Title II of the ADA, Landman must allege:

> (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [prison's] services, programs, or activities, or was otherwise subjected to discrimination by the [prison]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability.

*Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010).

Landman alleges that he is a qualified individual with a disability under Title II of the ADA and attaches a variety of exhibits that shed light on his status as a disabled veteran. Docket 1 ¶ 27; *see also* Docket 1-1 at 1-5. Landman alleges that he is being excluded from the benefits of the prison's mail services, and that such exclusion is intentional and by reason of his disability. Docket 1 ¶¶ 105-08. Specifically, Landman alleges that since 1998 defendants have routinely processed his VA mail, that they knew of his disabilities and status as a disabled veteran, and are now intentionally discriminating against him. *Id.* ¶¶ 28, 34-35, 105-08. At this stage, Landman's claim against defendants for discrimination under the ADA is sufficiently pleaded to survive initial review under 28 U.S.C. § 1915A.

Landman also alleges a second type of ADA discrimination, that is, that he was and remains entitled to certain accommodations due to his status as a disabled veteran and that the prison failed to provide such accommodations. *See United States v. Georgia*, 546 U.S. 151, 157 (2006) (finding that "the alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability-

related needs" was sufficient to state a claim under Title II of the ADA). Landman alleges that defendants' failure to accommodate his disability has prevented him from participating in mail service. Docket 1 ¶¶ 105-08. At this early stage of litigation, Landman's claim against defendants for failure to accommodate is sufficiently pleaded to survive initial review under 28 U.S.C. § 1915A.

Finally, Landman alleges that defendants retaliated against him for filing grievances and exercising his rights under the ADA. Docket 1 ¶¶ 109-10. Title V of the ADA (referring to 42 U.S.C. §§ 12201-12213) prohibits discrimination against "any individual because such individual has opposed any act or practice made unlawful by [the ADA.]" 42 U.S.C. § 12203(a). To succeed on a Title V ADA claim, a plaintiff must establish that (1) he engaged in statutorily protected activity; (2) adverse action was taken against him; and (3) a causal connection exists between the adverse action and protected activity. *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007). Landman alleges that he was retaliated against by prison officials for filing his IRR, ARR, and appeal of his ARR that opposed defendants' unlawful actions under the ADA. Docket 1 ¶¶ 44-48. Attached as exhibits to Landman's complaint are his IRR, ARR, and created ADA accommodation form that Landman filed seeking an ADA accommodation. *See* Docket 1-1 at 10-16, 19. Landman alleges facts to show he engaged in the protected activity of filing a grievance, staff at the prison retaliated against him, and the retaliation and filing of his grievance

were near the same time. Thus, Landman's retaliation claim under the ADA is sufficiently pleaded to survive initial review under 28 U.S.C. § 1915A.

## V.     42 U.S.C. § 1983 Retaliation Claim

Landman separately alleges that all defendants retaliated against him when he exercised his constitutional rights. Docket 1 ¶¶ 98-102. To succeed on his § 1983 retaliation claim, Landman must show that he engaged in protected activity and that defendants, in retaliation for the protected activity, took adverse action against Landman that would chill a person of ordinary firmness from engaging in that activity. *See Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).

Landman alleges that prison officials retaliated against him for his complaints regarding his mail problems. Docket 1 ¶¶ 98-100. Landman alleges that Reyes refused to give Landman an ADA form days after Landman filed an IRR and ARR about his mail interference. *Id.* ¶¶ 98-99. Landman also alleges that Livingston and unknown mailroom staff stole over $39,000 of his benefits because he voiced concern over his rejected mail. *Id.* ¶ 102. Landman alleges Reyes, Fluke, and Kaemingk may have also cashed the check and kept the funds, or had Livingston and the unknown mailroom staff cash it on their behalf. *Id.* ¶¶ 97, 102. These alleged actions "would chill a person of ordinary firmness from engaging" in reporting or filing grievances. *Revels*, 382 F.3d at 876. Thus, Landman's claim of § 1983 retaliation is sufficiently pleaded to survive initial review under 28 U.S.C. § 1915.

## VI.    Equal Protection Claim

Landman alleges that Reyes, Fluke, and Kaemingk violated his rights under the Equal Protection Clause. Docket 1 ¶ 96. "The heart of an equal protection claim is that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (citing *Timm v. Gunter*, 917 F.2d 1093, 1103 (8th Cir. 1990)). To establish "an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a 'fundamental right.' " *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815-16 (8th Cir. 2008) (quoting *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006)).

Landman claims Reyes treated him differently from other inmates when Reyes did not give Landman an ADA accommodation form, "despite the fact this form was routinely issued to other similarly situated inmates[.]" Docket 1 ¶ 96. Landman also alleges that Fluke and Kaemingk failed to act on Landman's ADA request even though defendants act on information from other inmates. *Id.* Landman does not, however, allege that this different treatment was based on a suspect classification or a fundamental right. Landman does not allege that other inmates receiving mail in manila envelopes were not subject to the same restrictions or delays, or that he was treated differently from similarly situated inmates receiving monthly VA disability benefits and mail. Thus, he fails to state a claim under the Equal Protection Clause against

Reyes, Fluke, and Kaemingk, and his claim is dismissed under 28 U.S.C.
§§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**VII.  Procedural Due Process Claim**

Landman alleges that defendants have denied him procedural due
process of law. Docket 1 ¶ 95. "The Fourteenth Amendment's Due Process
Clause protects persons against deprivations of life, liberty, or property; and
those who seek to invoke its procedural protection must establish that one of
these interests is at stake." *Wilson v. Austin*, 545 U.S. 209, 221 (2005). The
Procedural Due Process Clause, thus, provides that some form of notice and an
opportunity to be heard must be afforded before the state may deprive a citizen
of life, liberty, or property. *See Greenholtz v. Neb. Penal Inmates*, 442 U.S. 1, 12
(1979). Whether Due Process requires a pre-deprivation hearing or only a post-
deprivation remedy depends on whether the deprivation was pursuant to an
established state procedure (i.e., a jail regulation) or instead was an
unauthorized act by the jailer. *See Walters v. Wolf*, 660 F.3d 307, 313-14 (8th
Cir. 2011).

> Admittedly, prisoners do not shed all constitutional rights at the
> prison gate, but [l]awful incarceration brings about the necessary
> withdrawal or limitation of many privileges and rights, a retraction
> justified by the considerations underlying our penal system.

*Sandin v. Conner*, 515 U.S. 472, 485 (1995) (alteration in original) (internal
quotation omitted). Inmates have a property interest in money received from
outside sources. *Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996).
"Although the inmates' private interest in their personal funds is apparent,

18

inmates are not entitled to complete control over their money while in prison."
*Id.* The Eighth Circuit has held that "the failure to promptly notify [the inmate]
of the seizure [of his mail] was arguably a procedural due process violation."
*Knight v. Lombardi*, 952 F.2d 177, 179 (8th Cir. 1991).

Landman alleges that he was denied procedural due process. Docket 1
¶ 95. Specifically, Landman alleges that his mail was rejected without notice,
and that he did not receive a pre or post deprivation hearing. *Id.* Rather, he
only learned that his legal mail was returned to sender after being notified by
the VA. *Id.* ¶ 40. Landman also alleges that he was not notified of the seizure of
his VA service-benefit money, and he was then injured by this lack of
notification. Landman alleges that he has a First Amendment right to receive
his VA legal mail, and a right to receive his service benefits. *Id.* ¶¶ 80-84. After
reviewing Landman's complaint, the court concludes that Landman's
procedural due process claim is sufficiently pleaded to survive initial review
under 28 U.S.C. § 1915A.

**VIII. Substantive Due Process Claim**

Landman also alleges that defendants have denied him substantive due
process of law. Docket 1 ¶ 104. Embodied in the Due Process Clause of the
Fourteenth Amendment is both a substantive and procedural right. *See*
*Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 815-19 (8th Cir. 2011). To
establish a substantive due process claim, a plaintiff must allege that "a
fundamental right was violated and that the conduct shocks the conscience."
*Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009). In other words,

negligence does not constitute a substantive due process violation. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (concluding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property[.]" (emphasis in original)). "The theory of substantive due process . . . is properly reserved for truly egregious and extraordinary cases." *Azam v. City of Columbia Heights*, 865 F.3d 980, 986 (8th Cir. 2017) (internal quotation omitted).

Here, the alleged conduct by defendants of stealing over $39,000 in Landman's benefits is sufficiently egregious and extraordinary as to shock the conscience and assert a substantive due process violation. Docket 1 ¶ 83. This type of conversion or theft of funds "shocks the conscience." Thus, Landman's substantive due process claim is sufficiently pleaded to survive initial review under 28 U.S.C. § 1915.

## IX. Eighth Amendment Claim

Landman alleges that defendants violated his Eighth Amendment rights. Docket 1 ¶ 103. To sufficiently allege that the conditions of confinement violate the Eighth Amendment, Landman must assert that the alleged deprivation resulted "in the denial of the minimal civilized measure of life's necessities" and that prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation omitted); *see also Dalrymple v. Dooley*, 2014 WL 4987596, at *5 (D.S.D. Oct. 6, 2014). First, under the objective component, an inmate must show that a condition of confinement "pose[s] an unreasonable risk of serious

damage to his future health" or safety. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The Supreme Court has listed "food, clothing, shelter, medical care and reasonable safety" as minimal civilized measures. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). Second, under the subjective component, the inmate must show that the defendant prison officials "acted with a sufficiently culpable state of mind" in relation to the prison condition. *Hudson v. McMillian*, 503 U.S. 1, 20 (1992). A " 'should-have-known' standard, is not sufficient to support a finding of deliberate indifference." *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). A prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result." *Farmer*, 511 U.S. at 835. A prisoner need only show that the prison official knew of and disregarded "an excessive risk to inmate health or safety." *Id.* at 837.

Landman alleges that defendant's manila envelope policy deprived Landman of the minimal civilized measure of life's necessities and caused a substantial risk of harm to Landman's health. Docket 1 ¶ 103. But Landman fails to allege that any of the named defendants knew of, yet disregarded, an excessive risk to his health or safety. Although Landman alleges that he suffers from many medical issues that have been exacerbated by his mail rejections, Landman has not alleged that any of the defendants knew of his service-related medical issues or that rejecting his VA mail would cause an excessive risk to his health. Thus, Landman fails to state an Eighth Amendment claim, and his claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**X.      State-Law Tort Claim**

Landman alleges that defendants violated state tort law by acting with negligence, presumed malice, gross negligence, and that they tortuously interfered with a contractual relationship. Docket 1 ¶¶ 110-13. Landman alleges that the court has subject matter jurisdiction over these various state-law tort claims under 28 U.S.C. § 1332(a), commonly referred to as "diversity of citizenship" jurisdiction. Docket 1 ¶ 5. Landman alleges that he is a citizen of Minnesota, that defendants are citizens of South Dakota or Nebraska, and that the amount in controversy is greater than $75,000.00. *Id.* ¶¶ 5-6, 13, 130. At this initial stage, Landman has established diversity of citizenship jurisdiction. The court notes there is also pendant claim jurisdiction over these state law allegations.

Landman has alleged facts sufficient to state a negligence claim. Docket 1 ¶ 110; *see Bordeaux v. Shannon Cty. Schs.*, 707 N.W.2d 123, 127 (S.D. 2005) (discussing the elements of a negligence claim in South Dakota). But Landman has not alleged facts to state a presumed malice, gross negligence, or tortious interference claim. Instead, Landman provides a mere recitation of the elements of these claims. Landman fails to allege defendants willfully and wantonly proceeded with the manila envelope policy, even though they were consciously aware Landman would suffer injuries. *See Fischer v. City of Sioux Falls*, 919 N.W.2d 211, 215 (S.D. 2018) (discussing that gross negligence requires a conscious realization that an injury is probable, not just possible). Landman fails to allege any willful or wanton acts that demonstrates an

22

affirmative, reckless state of mind by which the court could infer presumed malice. *See Straub v. Flevares*, 2016 WL 1452363, at *3 (S.D. Apr. 13, 2016) (internal quotation omitted) (discussing the elements of presumed malice in South Dakota). And Landman fails to allege that defendants knew of or intentionally interfered with his contractual relationship with the VA. *See Gruhlke v. Sioux Empire Fed. Credit Union, Inc.*, 756 N.W.2d 399, 406 (S.D. 2008) (discussing the elements of tortious interference with a contract in South Dakota). Although Landman's complaint "does not need detailed factual allegations . . . [his complaint] requires more than labels and conclusions, and a formulaic recitation of the elements" is not enough. *Twombly*, 550 U.S. at 555. Thus, Landman's negligence claim is sufficiently pleaded to survive initial review under 28 U.S.C. § 1915A. All other state-law tort claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## XI.    SDHRA Claim

In his amended complaint, Landman seeks to add an additional claim against all defendants under the South Dakota Human Rights Act (SDHRA). Docket 14 at 5-9. "The South Dakota Supreme Court instructs that discrimination claims are to be analyzed under the same framework as claims under Title VII." *Riggs v. Bennet Cty. Hosp. and Nursing Home*, No. 16-CV-5077-JLV, 2019 WL 1441205, at *21 (D.S.D. Mar. 31, 2019) (citing *Huck v. McCain Foods*, 479 N.W.2d 167, 169-70 (S.D. 1991)); *see also Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 765 (8th Cir. 2014) ("In interpreting the SDHRA, the South Dakota Supreme Court has followed federal court decisions

construing analogous federal anti-discrimination statutes."). Landman alleges that he is a qualified person within the SDHRA. Docket 14 at 5. The state statutes that Landman cites do not concern discrimination in a prison setting, but instead discuss employer/employee relationships in an employment setting. *See* SDCL §§ 20-13-1 to 20-13-20. For example, "disability" for purposes of SDCL §§ 20-13-10 to 20-13-17 is defined as a physical or mental impairment that "is unrelated to an individual's ability to perform the major duties of a particular job or position, or is unrelated to an individual's qualifications for employment or promotion[.]" The SDHRA concerns unfair or discriminatory practices of employment agencies, labor organizations, or discriminatory housing practices. *See* SDCL §§ 20-13-13 to 20-13-20. Landman fails to allege that any disparate treatment or impact by defendants was against Landman as an "employee" for purposes of SDCL § 20-13-10. Thus, Landman fails to state a claim against all defendants, and his SDHRA state claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## XII. Various Motions

### A. Motion to Appoint Counsel

Landman filed a motion to appoint counsel. Docket 7. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, the district court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claim.

*Id.* At this early stage of litigation, Landman appears able to adequately present his claims. Landman's motion to appoint counsel (Docket 7) is denied.

**B.      Motion for Service**

Landman requests the court permit him to notice defendants of his pleadings rather than provide all defendants paper copies. Docket 10. Because Landman is an indigent prisoner without the ready ability to make copies and defendants can receive his filings through CM/ECF, the motion (Docket 10) is granted.

**C.      Motion to Proceed In Forma Pauperis**

Landman moves to proceed in forma pauperis. Docket 11. The court previously granted Landman leave to proceed in forma pauperis. Docket 5. Thus, Landman's new motion to proceed in forma pauperis (Docket 11) is denied as moot.

**D.      Motions to Amend and Supplement Amended Complaint**

Landman moves to amend and supplement his amended complaint. Dockets 16, 17. "[A]lthough pro se pleadings are to be construed liberally, pro se litigants are not excused from compliance with procedural and local rules." *Walker v. Shafer*, No. 16-CV-5121-JLV, 2019 WL 1369594, at *1 (D.S.D. Mar. 26, 2019) (citation omitted). To amend a complaint, a party must follow Federal Rule of Civil Procedure 15, which notes, "a party may amend its pleading only with . . . the court's leave." Fed. R. Civ. P. 15(a)(2). Also, if a party moves to amend its initial complaint, the party must comply with the District of South Dakota's Local Rule 15.1, which states:

> [i]n addition to other requirements of these local civil rules, any
> party moving to amend a pleading must attach a copy of the
> proposed amended pleading to its motion to amend with the
> proposed changes highlighted or underlined so that they may be
> easily identified. If the court grants the motion, the moving party
> must file a clean original of the amended pleading within 7 days.

D.S.D. Civ. LR 15.1. Landman has not received the court's leave to amend his

complaint a second or third time. Landman's amendments to his amended

complaint do not comply with Local Rule 15.1. Thus, the court denies

Landman's motions to amend or supplement his amended complaint. Dockets

16, 17.

## CONCLUSION

Thus, it is ORDERED

1.  The Clerk shall send a copy of this order to Landman's institution.

2.  Landman's motion to appoint counsel (Docket 7) is denied.

3.  Landman's motion as to service (Docket 10) is granted. Landman

    may satisfy his obligation to serve copies of pleadings upon

    defendants by sending a letter to defendants, or, if appearance

    has been entered by counsel, to defendants' counsel identifying all

    documents he files with the clerk of court. Defense counsel will

    receive notice from the clerk of court when those documents have

    been filed.

4.  Landman's motion to proceed in forma pauperis (Docket 11) is

    denied as moot.

5. Landman's motion for leave to file an amended complaint (Docket 14) is granted.

6. Landman's motions to amend and supplement his amended complaint (Dockets 16, 17) are denied.

7. Landman's First Amendment free speech claim, access to the courts claim, procedural and substantive due process claims, ADA claims, § 1983 retaliation claim, and state-law negligence claim survive screening under 28 U.S.C. § 1915A. All other claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

8. The Clerk shall send a blank summons form and USM-285 form to Landman, so he may cause the summons and complaint to be served upon the defendant.

9. Landman shall complete and return to the Clerk of Courts the completed summons and USM-285 form. Upon receipt of the completed summons and USM-285 form, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

10. The United States Marshal shall serve a copy of the complaint (Dockets 1, 14), Summons, and this Order upon each defendant as directed by Landman. All costs of service shall be advanced by the United States.

11. Defendant will serve and file an answer or responsive pleading to the claim in the complaint on or before 21 days following the date of service.

12.     Landman will keep the court informed of his current address at all

       times. All parties are bound by the Federal Rules of Civil Procedure and

       by the court's Local Rules while this case is pending.

Dated September 27, 2019.

                  BY THE COURT:

                  /s/ *Karen E. Schreier*
                  KAREN E. SCHREIER
                  UNITED STATES DISTRICT JUDGE