UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BURTON KENNETH LANDMAN,<br><br>                 Plaintiff,<br><br>vs.<br><br>DENNIS KAEMINGK, in his individual and official capacity, ROBERT DOOLEY, in his individual and official capacity, BRENT FLUKE, in his individual and official capacity, ALEX REYES, in his individual and official capacity, KARISSA LIVINGSTON, in her individual and official capacity, and JANE/JOHN DOE STAFF WORKING IN MDSP MAILROOM ON/AFTER 5/1/2018, in their individual and official capacities,<br><br>                 Defendants. | 4:18-CV-04175-KES<br><br><br>ORDER DENYING PLAINTIFF'S MISCELLEANEOUS MOTIONS |

Plaintiff, Burton Kenneth Landman, is an inmate at Mike Durfee State Prison (MDSP). Landman filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. This court screened Landman's complaint under 28 U.S.C. § 1915A and directed service in part and dismissed in part. Docket 18.[1]

---

[1] Landman's "First Amendment free speech claim, access to the courts claim, procedural and substantive due process claims, [Americans with Disabilities Act (ADA)] claims, § 1983 retaliation claim, and state-law negligence claim" survived screening, while all of his other claims were dismissed. Docket 18 at 27.

Defendants answered the complaint on December 30, 2019. Docket 34. On January 30, 2020, Landman moved the court to clarify the screening order, for appointment of counsel, and for leave to amend his complaint after the court has ruled on his "motion to clarify[.]" Docket 36. He also moves to strike the denials and affirmative defenses set forth in defendants' answer. Docket 37.

I.     **Motion to Amend/Motion to Clarify**

In his unopposed motion (Docket 36), Landman claims that this court failed to acknowledge his section 504 Rehabilitation Act claims and that his South Dakota Human Rights Act (SDHRA) claim, Equal Protection claim, Eighth Amendment claim, and state-law tort claims should not have been dismissed. Docket 36 at 2-13. He asserts that he is not asking to amend his complaint but would like the court to clarify why his claims were dismissed. *Id.* After review of the motion, this court liberally construes the pleading in Landman's favor and believes that Landman is trying to amend claims that were dismissed in this court's screening order because he alleges different facts and legal arguments.

Federal Rule of Civil Procedure 15 governs amendments of pleadings. *See* Fed. R. Civ. P. 15. Under the rule, a party may amend a pleading once as a matter of right within 21 days after serving the pleading. Fed. R. Civ. P. 15(a)(1). Thereafter, the party may amend only with the written consent of the opposing party or the court's permission. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave [to amend] when justice so requires." *Id.* Even under this generous standard, a court may deny a request to amend for " 'compelling

reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.' " *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)).

"A liberal amendment policy, however, is in no way an absolute right to amend. Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not abuse its discretion in denying leave to amend." *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) (internal citation omitted). "When late tendered amendments involve new theories of recovery and impose additional discovery requirements, appellate courts are less likely to hold a district court abused its discretion." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008). Further, a "[d]enial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6)." *Moody v. Vozel*, 771 F.3d 1093, 1095 (8th Cir. 2014) (internal quotation omitted). Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court will now address each claim Landman asked the court to clarify.

    A.    **Section 504 of the Rehabilitation Act**

Landman claims that this court failed to acknowledge his Section 504 of the Rehabilitation Act claim when it addressed his ADA claims in its screening

order. Docket 36 at 2. The Rehabilitation Act states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "The Rehabilitation Act does not authorize individual liability." *Brotherton v. Hill*, 2013 WL 122698, at *1 (E.D. Ark. Jan. 9, 2013) (citing *Damron v. N.D. Comm'r of Corr.*, 299 F. Supp. 2d 960, 979 (D.N.D. 2004)). Because the Rehabilitation Act does not authorize individual liability and Landman's defendants are all individuals, allowing him to amend his complaint to add Section 504 Rehabilitation Act claims would be futile. Therefore, the motion to amend the Section 504 Rehabilitation Act claim is denied.

    **B.**    **SDHRA Claim**

Landman argues that he meant to cite to the statute more generally and not just to the employment section in his complaint. Docket 36 at 3. He now seeks to amend his complaint and alleges that defendants have violated SDCL § 20-13-24. *Id.* at 4. Section 20-13-24 covers public services and unfair or discriminatory practices:

> It is an unfair or discriminatory practice for any person engaged in the provision of public services, by reason of . . . disability . . . to fail or refuse to provide to any person access to the use of and benefit thereof, or to provide adverse or unequal treatment to any person in connection therewith.

SDCL § 20-13-24. Landman claims that defendants have not made a good faith effort to accommodate him as an individual with a disability. Docket 36 at 4. A person who claims to be "aggrieved by a discriminatory or unfair practice may

4

file with the Division of Human Rights . . . . The charge shall set forth the facts upon which it is based, and shall contain any other information required by the division." SDCL § 20-13-29.

The South Dakota Supreme Court has interpreted "the word 'may' in [SDCL § 20-13-29] to mean that administrative exhaustion with the Division is required with all claims that fall within its jurisdiction." *O'Brien v. W. Dakota Tech. Inst.*, 670 N.W.2d 924, 928 (S.D. 2003) (citing *Montgomery v. Big Thunder Gold Mine, Inc.*, 531 N.W.2d 577, 579 (S.D. 1995)). "Any charging party or respondent claiming to be aggrieved by a final order of the Commission of Human Rights, . . . may obtain judicial review thereof under chapter 1-26." SDCL § 20-13-47. Under the South Dakota Administrative Procedures Act (chapter 1-26), "[f]ailure to exhaust administrative remedies where required is a jurisdictional defect." *S.D. Bd. of Regents v. Heege*, 428 N.W.2d 535, 539 (S.D. 1988).

Landman asserts that "he was only required to exhaust his disability related 'administrative remedies' under the SDHRA via prison [South Dakota Department/agency] level and not required to exhaust administratively within the state beyond DOC exhaustion." Docket 36 at 5 (alteration in original). Landman claims that his "SDHRA claims are so intertwined with his ADA Title II claims and § 504 RA claims that the Supremacy Clause absolutely excuses him from exhausting beyond prison grievance requirements on disability-related issues." *Id.*

5

The Supremacy Clause of the United States Constitution preempts state law and state constitutional law that conflicts with federal law. U.S. Const. art. VI, cl. 2. State law is " 'pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, *or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of* Congress.' " *S.D. Min. Ass'n, Inc. v. Lawrence Cty.*, 155 F.3d 1005, 1009 (8th Cir. 1998) (quoting *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987)).

In *South Dakota Farm Bureau v. Hazeltine*, this court held that an amendment of the South Dakota Constitution was in violation of the Supremacy Clause because there was no way for the plaintiffs to follow the amendment without violating the ADA. 202 F. Supp. 2d 1020, 1042-43 (D.S.D. 2002). Here, Landman argues that he does not have to exhaust his SDHRA claims because they are "intertwined" with his section 504 Rehabilitation Act and ADA claims. Docket 36 at 5. But Landman has not alleged facts to show that the exhaustion requirements for the SDHRA are in direct conflict with or frustrate the federal statutes.

Next, Landman argues that he is excused from exhausting administrative remedies (before the Commission of Human Rights) because he falls into three (of five) exceptions set forth in *Heege*. *Id.* Landman claims the exceptions 2, 3, and 5 apply to him. *Id. Heege* established that under exception 2, "[e]xhaustion is not required where the agency fails to act." *Heege*, 428 N.W.2d at 539 (citing *Weltz v. Bd. of Educ. of Scotland*, 329 N.W.2d 131, 132 n.1 (S.D. 1983) (holding

that because the school board failed to notify the plaintiff that her contract was not going to be renewed, there was no decision for the plaintiff to appeal, making exhaustion unnecessary)). Here, Landman claims that the South Dakota Attorney General's office did not respond to his "Notice of Claim" on October 26, 2018. Docket 36 at 5. Under SDCL § 20-13-29, the claim must be filed with the Division of Human Rights. Because Landman did not file his claim with the Division of Human Rights, he has not shown that the Division of Human Rights failed to act and therefore exception 2 does not apply.

Exception 3 states that "[e]xhaustion is not required where the agency does not have jurisdiction over the subject matter or parties." *Heege*, 428 N.W.2d at 539 (citing *Johnson v. Kolman*, 412 N.W.2d 109, 112 (S.D. 1987)). Landman asserts that the Supremacy Clause strips the agency from having jurisdiction over subject matter and parties. Docket 36 at 5. The court previously found in this opinion that Landman's Supremacy Clause claim is without merit.

Exception 5 states that "[e]xhaustion is not required in extraordinary circumstances where a party faces impending irreparable harm of a protected right and the agency cannot grant adequate or timely relief." *Heege*, 428 N.W.2d at 539 (citing *Mordhorst v. Egert*, 223 N.W.2d 501, 531-32 (S.D. 1974)). Landman claims that the mail policy has created violations of the Due Process Clause and of his right to access the courts. Docket 36 at 5. Landman has not alleged facts that support that the Division of Human Rights could not have granted adequate or timely relief and that his harm is irreparable. The court

7

finds that the proposed amendment to Landman's SDHRA claim is futile because he has not exhausted his remedies before the South Dakota Human Rights Commission, and he has not shown that he falls under the exhaustion exceptions. Therefore, his motion to amend his SDHRA claim is denied.

### C. Equal Protection

Landman seeks to amend his Equal Protection claim and asserts that his claim should have been construed as a "class of one" claim. *Id.* at 6. Landman claims that other inmates similarly situated to him were allowed to proceed with their ADA claims, but because he self-crafted his ADA forms, his were denied. *Id.*

A "class of one" Equal Protection claim was recognized by the United States Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). The Eighth Circuit has applied the "class of one" analysis to a prison setting. *Nolan v. Thompson*, 521 F.3d 983, 989-90 (8th Cir. 2008). In *Nolan*, because the plaintiff had not alleged he was a member of a protected class or that his fundamental rights had been violated, the court found he had to show that "the Board systematically and 'intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment.' " *Id.* at 989 (quoting *Olech*, 528 U.S. at 564). The plaintiff had to " 'provide a specific and detailed account of the nature of the preferred treatment of the favored class,' especially [because] the state actors exercise broad discretion to balance a number of legitimate considerations." *Id.* at 990 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214-15 (10th Cir.

2004)). The court found that the plaintiff did not demonstrate that the parole board "intentionally discriminated against him or even denied him parole on an irrational basis" because the board provide legitimate reasons for denying parole and the record lacked "sufficient evidence about Nolan's own parole file to enable meaningful comparison between him and those he claims are similarly situated." *Id.* (providing the court with a spreadsheet with over twenty different names, that indicated inmates' races, offense names, sentence lengths and more, was insufficient to compare the plaintiff with other inmates).

      Here, Landman only alleges that he was similarly situated to disabled inmates who were treated differently than him because inmates who were disabled and who turned in the actual ADA request form were allowed to proceed and he was not allowed to proceed because he made his own ADA form. Docket 36 at 6. Landman's complaint alleged that he asked for the ADA form on June 19, 2018, and on June 24, 2018, he had not received the requested form and he then proceeded to make his own form that was later denied. Docket 1 ¶¶ 45-46. Landman has not pleaded sufficient facts to proceed with a class of one Equal Protection claim because he has not pleaded facts that demonstrate defendants "intentionally discriminated against him" and has not alleged detailed facts so this court could meaningfully compare him to the other inmates he claims are similarly situated to him. *Nolan*, 521 F.3d at 990. Landman has offered significantly less facts than in *Nolan* to allege that defendants have discriminated against him and treated him differently than similarly situated defendants. Thus, his proposed amendment to his

9

Equal Protection claim as a class of one is futile. The motion to amend this claim is denied.

### D.  Eighth Amendment

Landman seeks to amend his Eighth Amendment claim that was dismissed in this court's screening order (Docket 18). Docket 36 at 7.[2] Now, Landman claims that the officials should have "reasonably known" that he was an individual with a disability and was not receiving access to his disability related programs. *Id.* at 7-9.

To sufficiently allege that the conditions of confinement violate the Eighth Amendment, Landman must assert that the alleged deprivation resulted "in the denial of the minimal civilized measure of life's necessities" and that prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994) (internal quotation omitted); *see also Dalrymple v. Dooley*, No. 4:12-CV-04098-KES, 2014 WL 4987596, at *5 (D.S.D. Oct. 6, 2014). First, under the objective component, an inmate must show that a condition of confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The Supreme Court has listed "food, clothing, shelter, medical care and reasonable safety" as minimal civilized measures. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200

---

[2] In this court's screening order, the court dismissed Landman's Eighth Amendment claim because "Landman ha[d] not alleged that any of the defendants knew of his service-related medical issues or that rejecting his VA mail would cause an excessive risk to his health." Docket 18 at 21.

(1989). Second, under the subjective component, the inmate must show that the defendant prison officials "acted with a sufficiently culpable state of mind" in relation to the prison condition. *Hudson v. McMillian*, 503 U.S. 1, 20 (1992) (Thomas, J. dissenting). A " 'should-have-known' standard [] is not sufficient to support a finding of deliberate indifference." *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). A prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result." *Farmer*, 511 U.S. at 835. A prisoner need only show that the prison official knew of and disregarded "an excessive risk to inmate health or safety[.]" *Id.* at 837.

Landman argues that " 'reasonable' prison officials understand they take their inmate charges 'as they are' with respect to illness or disability . . . making their charges potential 'egg shell' victims/claimants. Such 'reasonable' prison official would be aware their disabled charges are being treated by DOC medical." Docket 36 at 7. Landman claims that the

> the Eighth Amendment was implicated only after prison officials KNOWINGLY cut-off his access to disability-related programs, services and activities LAWFULLY available to him as a disabled service-connected veteran: by and through sweeping and drastic changes to its mail policy, its implementation; and worse, despite Landman's post-injury notice (IRR/ARR grievance), where officials' defended their policy and conduct and promised to continue this unabated.

*Id.* at 9. Landman asserts that in his claim for administrative remedies he wrote that the mail policy has "taken a toll on his well-being" and again told Kaemingk that "this all had really taken a toll" on him. Docket 1 ¶ 51.

11

Landman merely asserts that " 'reasonable' prison officials understand they take their inmate charges 'as they are' . . . . Such 'reasonable' prison official would be aware their disabled charges are treated by DOC medical." Docket 37 at 7. A "reasonable prison official" standard that Landman alleges here does not rise to the level of subjective deliberate indifference that is required to establish a claim under the Eighth Amendment. *See Spruce*, 149 F.3d at 786; *Farmer*, 511 U.S. at 837. Landman has not pleaded sufficient facts to support that each individual defendant knew that the mail policy was affecting his health and disregarded "an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. He only asserts that defendants knew they were cutting off his access to disability programs. Thus, this court finds that Landman's motion to amend his Eighth Amendment claim would be futile. The motion to amend this claim is denied.

E.     **State-Law Tort Claims**

This court dismissed most of Landman's state-law tort claims—the only claim to survive § 1915A review was his state-law negligence claim. Docket 18 at 27. Landman now asks the court to clarify why his other claims were dismissed and argues that his complaint was "clothed with the germane facts relevant to each tort." Docket 36 at 13.

Landman alleged that defendants violated state tort law by "acting with negligence, presumed malice, gross negligence, and that they tortuously interfered with a contractual relationship." Docket 18 at 22 (citing Docket 1 ¶¶ 110-13). This court found that Landman merely recited the elements of the

12

state-law tort claims and failed to allege sufficient facts to show that defendants "willfully and wantonly proceeded with the manila envelope policy, even though they were consciously aware Landman would suffer injuries." *Id.* (citing *Fischer v. City of Sioux Falls*, 919 N.W.2d 211, 215 (S.D. 2018)). Because Landman does not allege different facts in his motion to amend that would support his state-law claims, the motion to amend is denied as futile.

## II.     Motions for Appointment of Counsel

Landman moves for appointment of counsel. Docket 36 at 13; Docket 52. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). Under 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." "[T]he appointment of counsel should be given serious consideration by the district court if the plaintiff has not alleged a frivolous or malicious claim." *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1005 (8th Cir. 1984).

When determining whether to appoint counsel to a pro se litigant, the court will look at the factual and legal complexity of the claims. The Eighth Circuit considers: "the factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present his claim and the complexity of the legal issues." *Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991) (citing *Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986) (holding that the district court erred when it denied the plaintiff's motion for counsel solely because the plaintiff did not

13

raise factually complex issues)). Landman's claims do not appear to be factually or legally complex. Docket 9. Because this court believes Landman can adequately present his claims at this time, his motions for appointment of counsel are denied.

### III.   Motion to Strike

Landman moves to strike the denials and affirmative defenses that defendants pleaded in their answer and cites to Federal Rule of Civil Procedure 12(e). Docket 37. He argues that the defendants' answer is full of "boiler-plated, conclusory, unspecific, gen[e]ric, unsupported, and blanket denials and defenses." *Id.* ¶ 1. Landman claims "he cannot reasonably respond to [d]efendants' blanket denials and defenses. . . ." *Id.* ¶ 7. Landman believes that the answer does not meet the requirements set forth in *Twombly* and *Iqbal*. *Id.* at ¶ 11.

A reply to an answer is only necessary if the court orders one. *See* Fed. R. Civ. P. 7(a)(7) (stating that "if the court orders one, a reply to an answer" is allowed). Because this court has not ordered that Landman reply to defendants' answer, his motion to strike is denied.

### IV.   Motion to Stay

Landman moves to stay proceedings while his motions for screening clarification (Docket 36) and motion to strike (Docket 37) are pending. Docket 51. Because this order has denied both motions, his motion to stay proceedings (Docket 51) is denied.

## CONCLUSION

Thus, it is ORDERED:

1. That Landman's motions to clarify, to amend, and for appointment of counsel (Dockets 36, 52) are denied.

2. That Landman's motion to strike (Docket 37) is denied.

3. That Landman's motion to stay (Docket 51) is denied.

Dated July 2, 2020.

                                        BY THE COURT:

                                        /s/ *Karen E. Schreier*
                                        KAREN E. SCHREIER
                                        UNITED STATES DISTRICT JUDGE